

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
— — — — — — — — — — — — — — — — — — — — — — — — — — — — x
GURNEY'S INN RESORT & SPA LTD.,

                    Plaintiff,

        - against -

LINDA BENJAMIN, THOMAS CARUSONA and
CHRISTOPHER BENNETT, Solely in their Capacity as
Members of the Board of Directors of Gurney's Inn
Resort & Spa, Ltd.,

                    Defendants.
— — — — — — — — — — — — — — — — — — — — — — — — — — — — x

Index No.:  i o  29593

**SUMMONS**

**FILED**

AUG 13 2010

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action

and  to serve a copy of your answer, or, if the Verified Complaint is not served with this

Summons, to serve a notice of appearance on Plaintiff's attorney within twenty days after the

service of this Summons, exclusive of the day of service (or within thirty days after the service is

complete if this Summons is not personally delivered to you within the State of New York), and

in case of your failure to appear or answer, judgment will be taken against you by default for the

relief demanded in the Complaint.

Dated: Uniondale, New York
       August 12, 2010

                                        FARRELL FRITZ, P.C.

                                        By:_____
                                           James M. Wicks
                                           Franklin C. McRoberts
                                           *Attorneys for Plaintiff*
                                           *Gurney's Inn Resort & Spa Ltd.*
                                           1320 RXR Plaza
                                           Uniondale, New York 11556
                                           (516) 227-0700

TO:    Linda Benjamin
41 Hackberry Hill Road
Weston, Connecticut 06883

Thomas Carusona
1581 Franklin Avenue, Suite LL
Mineola, New York 11501

Christopher Bennett
50 Arbor Lane
Dix Hills, New York 11746

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

GURNEY'S INN RESORT & SPA LTD.,

                Plaintiff,

        - against -

LINDA BENJAMIN, THOMAS CARUSONA and
CHRISTOPHER BENNETT, Solely in their Capacity as
Members of the Board of Directors of Gurney's Inn
Resort & Spa, Ltd.,

                Defendants.
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

Index No.:

**VERIFIED**
**COMPLAINT**

FILED

AUG 1 3 2010

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

Plaintiff Gurney's Inn Resort & Spa, Ltd. ("Gurney's"), by its attorneys, Farrell Fritz,

P.C., as and for its Verified Complaint, alleges as follows:

## NATURE OF THE ACTION

    1.     This action is for a declaratory judgment to determine the respective rights of the

three members of the Board of Directors of Gurney's to vote concerning whether to increase,

reduce, change, modify or terminate services or expenditures at Gurney's.

    2.     Defendant Linda Benjamin ("Benjamin") was elected by the Class A shareholders

of Gurney's and defendants Thomas Carusona ("Carusona") and Christopher Bennett

("Bennett") were elected by the Class B shareholders of Gurney's.

    3.     Benjamin has taken the erroneous position that she has the exclusive right to

determine whether to reduce, change, modify or terminate services or expenditures at Gurney's

and that Carusona and Bennett have no right to vote concerning such matters.

    4.     However, Gurney's By-Laws and organizational documents plainly provide that

Benjamin, Carusona and Bennett have equal voting rights with respect to all matters before the

Board of Directors.

5.      Accordingly, the Court should issue a declaratory judgment that Benjamin, Carusona and Bennett have equal voting rights with respect to all matters presented to the Board of Directors, including whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's.

## THE PARTIES

6.      Gurney's is a New York corporation with a principal place of business at 290 Old Montauk Highway, Montauk, New York 11954.

7.      Upon information and belief, Benjamin is an individual residing in the State of Connecticut.

8.      Upon information and belief, Carusona is an individual residing in the State of New York.

9.      Upon information and belief, Bennett is an individual residing in the State of New York.

## FIRST CAUSE OF ACTION
(Declaratory Judgment)

### The Class A and Class B Shareholders

10.      Gurney's is a popular resort, spa and conference center founded in 1926, located in Montauk, New York.

11.      Gurney's is a private corporation owned by two classes of shareholders: Class A shareholders, consisting of cooperative timeshare owners whose ownership interests are subject to the terms of an Interval Proprietary Lease between the Class A shareholders and Gurney's, and Class B shareholders, whose shares are owned by and through the Gurney's Inn Corp. Liquidating Trust.

2

12.     The Class A shareholders are entitled to elect one of the three members of the Board of Directors of Gurney's.

13.     Benjamin currently serves as the member of the Board of Directors elected by the Class A shareholders.

14.     The Class B shareholders are entitled to elect two of the three members of the Board of the Directors of Gurney's.

15.     Carusona and Bennett currently serve as the members of the Board of Directors elected by the Class B shareholders.

**The Federal Action**

16.     In November 2009, Benjamin commenced an action against Carusona and Bennett in the United States District Court for the Southern District of New York (the "Federal Action"), alleging causes of action for alleged violation of Section 720 of the Business Corporation Law, breach of fiduciary duty, and for an injunction to reconstitute the Board of Directors.

17.     Among the various allegations in the Federal Action, Benjamin alleged that Section 3(e) of the Interval Proprietary Lease between the Class A shareholders and Gurney's confers authority solely upon Benjamin, in her capacity as the Class A director, to determine the appropriate level of services and expenditures at Gurney's.

18.     In particular, Benjamin alleged that Section 3(e) of the Interval Proprietary Lease "invests [Benjamin], as the Class A director, with discretionary power over the maintenance and management of Gurney's."

19.     Since she commenced the Federal Action, Benjamin has taken the more pronounced position, both in litigation and publicly, that she has the *sole power* to determine

3

whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's

and that the Class B directors have no power to vote concerning such matters.

20.    Section 3 of the Interval Proprietary Lease does not support Benjamin's lofty and

expansive view of her corporate powers.

## Section 3(e) of the Interval Proprietary Lease

21.    Section 3 of the Interval Proprietary Lease provides, in its entirety, as follows:

> 3. (a)    The Interval Lessor [i.e., Gurney's] shall at its expense use its best efforts to provide the following services: (1) maintenance and management of the resort accommodation; (2) heat, light, power, air conditioning and utilities, etc.; (3) comprehensive casualty, flood, liability, workmen's compensation and other insurance in types and amounts deemed necessary and acceptable by the directors; (4) check-in and check-out service; (5) valet parking; (6) courtesy car to and from local airport and railroad stations on check-in and check-out; (7) twenty-four hour security guards; (8) initial fixtures, furniture and linens described on inventory annexed as Exhibit B (inventory to be taken before and after each use of premises and will vary from unit to unit).

> (b)    The Interval Lessor shall use its best efforts to provide the following services at the expense of the Interval Lessee: (1) daily maid/turndown service charged on a per diem occupancy basis; (2) telephone and telegraph charged on local, long distance and all toll basis.

> (c)    The Interval Landlord at is expense shall use its best efforts to provide the following basic spa services by way of a recreational lease between the Interval Lessor and other commercial tenants: (1) heated salt water pool facilities; (2) men's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (3) women's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (4) seasonal ice skating.

> (d)    Other commercial lessees of the Interval Lessor shall provide the following services, to the extent practicable, to the general public and the Interval Lessee on a fee, a la carte basis (1) public restaurant, bar and beverage facilities; (2) seasonal public beach barge, beverage and food facilities, (3) public spa therapeutic treatments and facilities and plans; (4) public spa salon, Institut de Beaute.

(e)     The covenants by the Interval Lessor herein contained are subject, however, to the discretionary power of the Directors elected by Class A stockholders to determine from time to time what services and what attendance shall be proper in the manner of maintaining and operating the buildings and also what existing services shall be increased, reduced, changed, modified or terminated.   Notwithstanding the aforesaid, at all times, directors may condition availability of such facilities based on emergencies, strikes, non-accessibility, acts of God, or fiscal problems brought on by maintenance collection deficiencies.

(Interval Proprietary Lease, §3).

22.     When read in the context of the entirety of Section 3 of the Interval Proprietary Lease, Section 3(e) should be understood not as a provision that empowers the *Class A shareholders*, but rather, as a provision intended to protect *Gurney's* against potential assertions from the Class A shareholders that they are entitled at all times to a premium level of service at Gurney's expense.

23.     Sections 3(a) through 3(d) provide that Gurney's has an affirmative duty to use its "best efforts" to provide to the Class A shareholders the services set forth in Sections 3(a) through 3(d).

24.     Gurney's duty to use its "best efforts" to provide the services set forth in Sections 3(a) through 3(d) is then qualified by the discretionary power of the Class A shareholders, set forth in Section 3(e), to choose "from time to time" that certain services should be "increased, reduced, changed, modified or terminated."

**The By-Laws**

25.     Moreover, Benjamin's allegation that the Class A director alone shall determine the appropriate level of services and expenditures at Gurney's conflicts irreconcilably with Gurney's By-Laws.

5

26.    Section 5 of the By-Laws provides that "[a]t all meetings of the Board of Directors, each director shall be entitled to one vote.  The vote of a majority of the Board of Directors present at the time of a vote of a duly constituted meeting shall be the act of the Board of Directors."

27.    Accordingly, each member of the Board of Directors is entitled to one, equal vote with respect to *all matters* before the Board of Directors.

28.    Moreover, Section 7 of the By-Laws expressly provides the Board of Directors, as a collective body, with the power to determine the level of services and expenditures at Gurney's.

29.    Section 7 of the By-Laws provides:

> **The Board of Directors** shall have discretionary power to prescribe the manner of maintaining and operating the resort accommodation of the Corporation and to determine the cash requirements of the Corporation to be paid as aforesaid by the interval shareholder-tenants [i.e., the Class A shareholders] under their respective interval proprietary leases.  **Every such determination by the Board of Directors shall be final and conclusive as to all interval shareholder-tenants and any expenditures made by the Corporation's officers or its agent under the direction or with the approval of the Board of Directors of the Corporation shall, as against the interval shareholder-tenants, be deemed necessarily and properly made for such purpose.**

(By-Laws, §7 [emphasis added]).

30.    The By-Laws plainly provide that the "Board of Directors," as a whole, shall have the "discretionary power" to authorize the "manner of maintaining and operating" Gurney's and all such "determination[s]" and "expenditures" "shall be final and conclusive" as against the Class A shareholders.

6

**The Offering Plan**

31.     Benjamin's myopic interpretation of Section 3(e) of the Interval Proprietary Lease

is further refuted by the Offering Plan by which Gurney's sold the Class A shares to the public.

32.     The Offering Plan provides:

> The covenants by the Interval Lessor [i.e., Gurney's] herein
> contained are subject, however, to **the discretionary power of the
> Directors** to determine from time to time what services and what
> attendance shall be proper in the manner of maintaining and
> operating the buildings and also what existing services shall be
> increased, changed, modified or terminated.

(Offering Plan, at 50 [emphasis added]).

33.     The Offering Plan demonstrates that all of the Directors, not just the Class A

Director, are entitled to vote concerning whether existing services should be increased, changed,

modified or terminated.

**The First Amended Plan of Reorganization**

34.     Gurney's filed for bankruptcy in 1994.

35.     Benjamin's position is further refuted by First Amended Plan of Reorganization,

by which Gurney's emerged from Chapter 11 bankruptcy protection.

36.     Prior to the reorganization of Gurney's in bankruptcy, only the Class B

shareholders were entitled to elect the three members to the Board of Directors; the Class A

shareholders had no right whatsoever to elect a member to the Board of Directors.

37.     In or around April 1999, the bankruptcy court approved Gurney's First Amended

Plan of Reorganization.

38.     Section 6.2(b) of the First Amended Plan of Reorganization amended Gurney's

By-Laws to bestow upon the Class A shareholders, for the first time, the right to elect a member

to the Board of Directors.

39.     The First Amended Plan of Reorganization also resulted in a major restructuring of Gurney's operations.

40.     Pursuant to Section 6.4, Gurney's took over the operations of what had been separately run resort, restaurant and spa facilities and integrated them into a single entity.

41.     As a result of the reorganization, Gurney's now uses all income from these formerly separately run resort, restaurant and spa facilities to support the operations and provide the services associated with the entire entity.

42.     The First Amended Plan of Reorganization made it clear that the members of the Board of Directors, as a collective group, have the authority to determine the use of these funds for the benefit of Gurney's operations and the Class A shareholders.

43.     Section 6.2(b) of the First Amended Plan of Reorganization provides that "[w]ith the exception of the Class A Shareholder Member of the Board of Directors, all other Directors of the Board of Directors shall be appointed by [the Class B shareholders] until the Purchase Money Mortgage [held by the Class B shareholders upon Gurney's real property] . . . is paid in full."

44.     The First Amended Plan of Reorganization granted the Class A shareholders a right to elect a member to the Board of Directors solely to give them a seat at the table, not to supplant the Class B members of the Board of Directors.

45.     In other words, the First Amended Plan of Reorganization affected the authority of the members of the Board of Directors in no respect *other than* reducing the number of members elected by the Class B shareholders from three to two and giving the Class A shareholders the right to elect a single director in place of the former director elected by the Class B shareholders.

8

**Other Provisions of the Interval Proprietary Lease**

46.     Finally, Benjamin's interpretation of Section 3(e) of the Interval Proprietary Lease conflicts with other provisions of the Interval Proprietary Lease.

47.     Most importantly, Section 1(c) of the Interval Proprietary Lease provides that the Board of Directors shall be entitled to determine Gurney's "Cash requirements," which is defined as

> the estimated amount of cash which **the Directors shall from time to time in their judgment determine** to be necessary or proper for (1) the operation, maintenance, care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as it may deem proper; and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from interval proprietary leasees), and (ii) cash on hand which the Directors in their discretion may choose to apply. The Directors may from time to time modify their prior determination and increase or diminish the amount previously determined as cash requirements for a year or portion thereof. . . .

(Interval Proprietary Lease, §1[c] [emphasis added]).

48.     Viewed in their entirety, these provisions establish conclusively that the entire Board of Directors, and not just Benjamin, is empowered to vote concerning whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's.

**The Present Controversy**

49.     Resolution of this dispute is critical to Gurney's.

50.     The Court in the Federal Action made a remark in an Order denying Benjamin's motion for a preliminary injunction that "the Class A shareholders under Paragraph 3(e) of the Lease are granted control of the services for which they are liable." (Order dated April 21, 2010, at 13).

9

51.     This precise issue was not briefed or argued by any party and the Court rendered the above statement merely in the course of "presum[ing] without deciding" that the Class A shareholders would oppose an assessment to finance Carusona and Bennett's litigation defense. (*Id.*).

52.     Despite the equivocal nature of the Court's statement, Benjamin sent a letter to the Class A shareholders dated May 24, 2010, in which she represented falsely that the Court ruled that Benjamin has the sole power to control Gurney's financial affairs.

53.     In her letter, Benjamin declared:

> I am Linda Benjamin, your only independent Class A Director of Gurney's Inn. **THANKS TO MY EFFORTS I AM THE ONLY PERSON WHO WAS ABLE TO ESTABLISH THAT THE CLASS A DIRECTOR CONTROLS THE LEVEL OF SPENDING. THIS IS A MAJOR WIN FOR US!**

54.     Benjamin also stated:

> **I AM THE DIRECTOR WHO:** . . . has obtained a ruling from the court that, after 28 years of being at the mercy of the financial dictates of the Class B shareholder, the **Class A director has the right to control the level of spending at Gurney's.**

55.     Benjamin claimed that "the Court has said that **we have control of the financial affairs of Gurney's.**"

56.     Benjamin's far-reaching interpretation of her own powers has seriously undermined the ability of the Board of Directors and management of Gurney's to carry out basic corporate decisions.

57.     Benjamin is now attempting to micromanage and unilaterally control Gurney's business and financial decisions.

58.     Gurney's is being gravely harmed as a result of this dispute.

59.    Accordingly, an actual and justiciable controversy exists concerning the respective powers of the Class A and Class B directors to determine whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's.

60.    Therefore, Gurney's seek a declaratory judgment that each member of the Board of Directors is entitled to an equal vote with respect to all matters before the Board of Directors, including whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's.

**WHEREFORE**, Gurney's Inn Resort & Spa Ltd. demands judgment as follows:

a)    on the First Cause of Action, declaring that each member of the Board of Directors of Gurney's has equal voting rights with respect to all matters before the Board of Directors, including whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's;

b)    awarding attorneys' fees, costs and disbursements; and

c)    awarding such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
  August 12, 2010

        FARRELL FRITZ, P.C.

        By: _____
          James M. Wicks
          Franklin C. McRoberts
          *Attorneys for Plaintiff*
          *Gurney's Inn Resort & Spa Ltd.*
          1320 RXR Plaza
          Uniondale, New York 11556
          (516) 227-0700

## VERIFICATION

STATE OF NEW YORK     )
                           )     **ss.:**
COUNTY OF NASSAU    )

       THOMAS CARUSONA, being duly sworn, deposes and says: I am the President of

Gurney's Inn Resort & Spa Ltd.; I have read the foregoing Verified Complaint; I know the

contents thereof; the matters contained therein are true to my own knowledge except as to

matters stated on information and belief and as to those matters I believe them to be true.

                                       THOMAS CARUSONA

Sworn to before me this
/2ᵗʰ day of August, 2010.

Notary Public

JENNIFER EBERT
Notary Public, State of New York
No. 01EB6009328
Qualified in Nassau County
Commission Expires June 22, 20/4

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

GURNEY'S INN RESORT & SPA LTD.,

                          Plaintiff,

        v.

LINDA BENJAMIN, THOMAS CARUSONA and
CHRISTOPHER BENNETT, Solely in their Capacity as
Members of the Board of Director's of Gurney's Inn
Resort & Spa, Ltd.

                          Defendants.

## SUMMONS AND VERIFIED COMPLAINT

**FARRELL FRITZ, P.C.**
*Attorneys for Plaintiff*
*Gurney's Inn Resort & Spa Ltd.*
1320 RXR PLAZA
UNIONDALE, NY 11556-0120
(516) 227-0700

*This certification, pursuant to 22 N.Y.C.R.R. Part 130-1.1-a,*
*applies to the following papers contained within this back:*

(1)   Summons
(2)   Verified Complaint

Dated:   August 12, 2010              Signature: _____
                                      Print Signer's Name:   James M. Wicks



Exhibit B

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Linda Benjamin | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Thomas Carusona, Christopher Bennett, et al. | ) |
| and Nominal Defs., Gurney's Inn Resort & Spa | ) |
| *Defendant* | ) |

Civil Action No.  **09 CIV 9722**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> THOMAS CARUSONA,
> c/o Gurney's, Inn Resort & Spa Ltd.
> 290 Old Montauk Highway,
> Montauk, New York 11954

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Harwood Feffer LLP
488 Madison Ave.
8th fl.
New York, NY 10022

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

J. MICHAEL ...

*CLERK OF COURT*

Date:  NOV 2 3 2009

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                    *Server's signature*

                                 _____
                                                    *Printed name and title*


                                 _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

JUDGE SWEET

| | |
|---|---|
| Linda Benjamin | ) |
| | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. |
| Thomas Carusona, Christopher Bennett, et al. | ) |
| and Nominal Defs., Gurney's Inn Resort & Spa | ) |
| _Defendant_ | ) |

09 CIV 9722

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

Gurney's Inn Corp. Liquidating Trust
290 Old Montauk Highway,
Montauk, New York 11954

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Harwood Feffer LLP
488 Madison Ave.
8th fl.
New york, NY 10022

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

J. MICHAEL McMAHON

CLERK OF COURT

Date: _____

NOV 2 3 2009

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

□  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

□  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□  I returned the summons unexecuted because _____ ; or

□  Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                    _____
                                              *Printed name and title*

                                    _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Southern District of New York

| | | |
|---|---|---|
| Linda Benjamin | ) | **JUDGE SWEET** |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. |
| Thomas Carusona, Christopher Bennett, et al. | ) | |
| and Nominal Defs., Gurney's Inn Resort & Spa | ) | **09 CIV 9722** |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

        Gurney's, Inn Resort & Spa Ltd.
        290 Old Montauk Highway,
        Montauk, New York 11954

        A lawsuit has been filed against you.

        Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Harwood Feffer LLP
                            488 Madison Ave.
                            8th fl.
                            New york, NY 10022

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_   J. MICHAELON

Date:    **NOV 2 3 2009**

                                      _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 02/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

                                      _____
                                                  *Server's signature*

                                      _____
                                                 *Printed name and title*

                                      _____
                                                 *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT JUDGE SWEET

for the

Southern District of New York

| | |
|---|---|
| Linda Benjamin | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| Thomas Carusona, Christopher Bennett, et al. | ) |
| and Nominal Defs., Gurney's  Inn Resort & Spa | ) |
| _____ | ) |
| *Defendant* | ) |

Civil Action No.   **09  CIV  9722**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

CHRISTOPHER BENNETT
c/o  Gurney's, Inn Resort & Spa Ltd.
290  Old Montauk Highway,
Montauk, New York 11954

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Harwood Feffer LLP
488 Madison Ave.
8th fl.
New york, NY 10022

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

J. MICHAEL McMAHON

CLERK OF COURT

Date:   NOV 2 3 2009    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                     *Server's signature*

                                              _____
                                                     *Printed name and title*

                                              _____
                                                     *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'09 CIV   9722**

------------------------------x
LINDA BENJAMIN,                :
                              :
            Plaintiff,         :
                              :
      -against-                :
                              :
THOMAS CARUSONA,               :
CHRISTOPHER BENNETT,           :
and GURNEY'S INN CORP.         :
LIQUIDATING TRUST,             :
                              :
            Defendants,        :
                              :
      -and-                    :
                              :
GURNEY'S INN RESORT            :
& SPA LTD.,                    :
                              :
            Nominal Defendant. :
------------------------------x

<u>**VERIFIED COMPLAINT**</u>

ECF CASE



Plaintiff, Linda Benjamin, by and through her attorneys, alleges the following upon personal knowledge as to her own acts, and upon information and belief as to all other matters based in part upon the investigation conducted by counsel:

<u>**NATURE OF THE ACTION**</u>

1.    Plaintiff alleges that the defendant directors, in breach of their fiduciary duty of loyalty, subordinated the interests of nominal defendant Gurney's Inn Resort & Spa Ltd. ("Gurney's") and its Class A shareholders to the interests of the beneficial owners of Class B shares.  As a result of the directors' disloyalty, the corporation is incurring operating deficits for the benefit of such beneficial owners of Class B shares and the oppressed Class A shareholders are being forced to

surrender their equity interests rather than continue to bear the entire burden of subsidizing such operating deficits.  Moreover, and in furtherance of their oppression of the Class A shareholders, the director defendants are concealing, from plaintiff, information that is necessary for plaintiff to properly fulfill her fiduciary duties.

2.   Plaintiff brings this action, pursuant to Section 720(b) of the New York Business Corporation Law ("BCL"), to redress the harm caused by defendants' breach of their fiduciary duties by, among other things:

(a) violating the express terms of the Interval Proprietary Lease between nominal defendant Gurney's and Gurney's Class A shareholders (the "Lease") by denying plaintiff her right, as the Class A director, to determine what services are necessary to maintain and manage Gurney's;

(b) withholding information concerning Gurney's and its business and financial affairs from plaintiff;

(c) failing and refusing to make a good faith effort to satisfy Gurney's mortgage obligations;

(d) failing and refusing to make a good faith effort to sell authorized but unissued Class A shares and reacquired Class A shares held in Gurney's treasury; and

(e) permitting the Montemarano/Cooper Family (as defined in paragraph 5, below) to continue their efforts to force

2

the Class A shareholders to surrender their shares and the
appurtenant Leases by: (i) operating Gurney's at a loss and then
assessing the Class A shareholders to compensate for the loss;
(ii) engaging in widespread nepotism; and (iii) collecting
payments on the Trust Mortgage (as defined in paragraph 7,below)
far higher than that contractually permissible.

3.   Plaintiff seeks: (a) a declaration that defendants have
violated and/or aided and abetted the breach of their fiduciary
duties; (b) a preliminary and permanent injunction prohibiting
defendants from interfering with plaintiff's right, pursuant to
Section 3(e) of the Lease, to control the level of services
provided by Gurney's; (c) the removal of the individual
defendants as directors of Gurney's, institution of a new
election of directors, and appointment of a receiver for the
management of Gurney's until a new election of directors is
called and a new board organized; (d) an accounting by the
individual defendants of their stewardship of Gurney's finances
and assets; and (e) damages against defendants.

## THE PARTIES

4.   Plaintiff resides in Connecticut and is the only
Class A director of Gurney's.  Plaintiff was elected to that
position by Gurney's Class A shareholders on May 20, 2009.
Defendants Thomas Carusona and Christopher Bennett comprise the
other two members of Gurney's three-member board of directors.

5.    Defendant Thomas Carusona resides in New York and has
served as a director of Gurney's for approximately the past ten
years, having been appointed by Nicholas Montemarano's immediate
survivors and extended family (collectively, the
"Montemarano/Cooper Family") through their control over Gurney's
Inn Corp. Liquidating Trust (the "Monte Trust").  Defendant
Carusona has a beneficial interest in Gurney's Class B shares and
serves as its President and Chairman of the board of directors.
Defendant Carusona has acted as an attorney for
Montemarano/Cooper Family interests and the Monte Trust.

6.    Defendant Christopher Bennett resides in New York and
has served as a director of Gurney's since 2007, having been
appointed by the Montemarano/Cooper Family through their control
over the Monte Trust.  Defendant Bennett has a beneficial
interest in Gurney's Class B shares.  Defendant Bennett also
serves as an accountant for Montemarano/Cooper Family interests
and the Monte Trust.

7.    Defendant Monte Trust, a New York trust, currently
holds a second consolidated mortgage on Gurney's property (the
"Trust Mortgage") in the amount of approximately $2.8 million,
holds all 2,700,000 Class B shares, and alleges that it holds a
future interest in approximately 61,250 unsold Class A shares.
Because it appointed a majority of Gurney's directors, the Monte
Trust has controlled Gurney's at all relevant times.  As the

4

holder of a majority of the interests in the Monte Trust, the Montemarano/Cooper Family directly controls the Monte Trust and therefore indirectly controls Gurney's and its management.   All major management positions are held by members of the Montemarano/Cooper Family.   The Monte Trust, as Gurney's controlling shareholder, owes fiduciary duties to Gurney's minority shareholders, i.e., the holders of Class A shares.

8.   Gurney's, on whose nominal behalf this action is brought, was formed on July 1, 1981 under the BCL.   Gurney's is located at 290 Old Montauk Highway, Montauk, New York 11954 (the same address used by the Monte Trust).   Gurney's primary sources of income included funds derived from the sale of unsold timeshare units and the collection of maintenance fees from owners of timeshare units, as well as revenue from the restaurant, spa, and rentals.   Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999.

9.   Under the terms of the bankruptcy reorganization plan, the Montemarano/Cooper Family, through its control of the Monte Trust,   maintains voting control over the selection of two of the three members of the board until the Trust Mortgage is satisfied. As discussed in detail below, the failure to make any reasonable, good faith effort to pay off the Trust Mortgage has benefitted the Montemarano/Cooper Family and the Monte Trust rather than Gurney's or the Class A shareholders.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, by virtue of diversity of citizenship and an amount in controversy exclusive of interest and costs, in excess of $75,000.  Plaintiff is a citizen of the State of Connecticut.  The individual defendants are citizens of the State of New York or of states other than Connecticut.  The Monte Trust is organized under New York law and operates in New York.  The nominal defendant is a New York corporation, having its principal place of business in New York.

11.   All of the defendants are subject to service in New York, and this Court therefore can obtain personal jurisdiction over them.

12.   Venue is proper in this District because all of the board of director meetings that are not held by telephone are held at the offices of Gurney's corporate counsel which are located in this District.

### FACTUAL ALLEGATIONS

13.   The patriarch of the Montemarano/Cooper Family, Nicholas Montemarano, began operating nominal defendant Gurney's as a hotel resort in 1956.

14.   Gurney's is a 109 unit, 137 room Atlantic Oceanfront resort, health and beauty spa, restaurant, and conference center located in Montauk, New York.

6

15. On May 15, 1982, Gurney's issued an Offering Plan (the "Offering Plan") to convert Gurney's from a vacation resort into a cooperative timeshare property by offering 51 weekly time sharing interests in units. According to the Offering Plan, the "principal purpose of this offering is the sale of cooperative apartments for use . . . as vacation homes by purchasers, for their own use and occupancy during vacation periods, with the ordinary concomitants of vacation home ownership subject to the unique features of time share cooperative ownership."

16. Gurney's Certificate of Incorporation provides for two classes of voting stock: 750,000 shares of Class A, $0.025 par value stock, and 2,700,000 shares of Class B, $0.01 par value stock. The issued and outstanding Class A stock is owned by the individual timeshare owners.

17. Purchasers of Gurney's timeshare units acquire a proprietary lease granting purchasers the right to use their units and Gurney's resort accommodations for a specified week of each calendar year. Ownership of these time-sharing units is also evidenced by the issuance of Class A shares of Gurney's stock to purchasers. Purchasers maintain their ownership interests in Gurney's units for a fifty-year term (with the right to elect to extend the term) by paying maintenance and assessment fees, and other charges, as set by Gurney's board of directors.

7

18.  The Montemarano/Cooper Family holds a majority of the interests in the Monte Trust.  The Monte Trust holds all of the 2,700,000 Class B shares.  Because Class A and B shareholders each have one vote per share, and generally vote together, the Montemarano/Cooper Family will prevail on all shareholder votes when the Class A and Class B shareholders vote together.

19.  As beneficial owners of a controlling amount of Class B shares of Gurney's, the Montemarano/Cooper Family, using the Monte Trust as the lever, has and will continue having control over Gurney's operations until the Trust Mortgage is satisfied in full.  Once the Trust Mortgage is satisfied, the Class B shares will lose all voting rights, and control over Gurney's operations will be transferred to the Class A shareholders.  Remarkably, after 27 years, there still has been no transfer of control of Gurney's from the Montemarano/Cooper Family to the Class A shareholders/timeshare owners.

20.  At all relevant times, the Monetemarano/Cooper Family and the Monte Trust, through their control of Gurney's management and board of directors, including the individual defendants, had total and unfettered control of all aspects of the operations of Gurney's.  Due to such control, the Monetemarano/Cooper Family and the Monte Trust were able to manipulate and utilize Gurney's assets as they saw fit without providing plaintiff or the Class A shareholders with a true accounting.

8

21.  Although the Class A shareholders had been given the
right by the Offering Plan to elect one of the three members of
the board of directors, Class A shareholders effectively were
prevented from exercising such right.  Consequently, the first
independent Class A director, the plaintiff, was not elected
until May 2009.

22.  Pursuant to the Offering Plan and Section 4.3 of the
First Amended Plan of Reorganization, as soon as the Trust
Mortgage has been satisfied, the Class A stockholders will obtain
full voting control over Gurney's board.  The Class B shares will
no longer have any voting rights, and all the Class B shares will
be cancelled.

23. Aware of this, the Montemarano/Cooper Family, through
their control of Gurney's board of directors, including the
individual defendants, has engaged in a course of conduct
designed to prevent Gurney's from satisfying the Monte Trust.  In
furtherance of this scheme, the individual defendants, under the
control of the Montemarano/Cooper Family and the Monte Trust,
have economically coerced, and continue to economically coerce,
Class A shareholders to surrender their units, and thus their
voting rights, while refusing to spread the burden of assessments
by selling unsold units.  By operating Gurney's at a loss and
making it increasingly expensive for Class A shareholders to
continue holding their Class A shares, defendants are able to

9

ensure that the Monte Trust remains unsatisfied, thus maintaining the Montemarano/Cooper Family's controlling interest in Gurney's.

24. For the year ended December 31, 2007, Gurney's incurred a net loss of $585,398. For the year ended December 31, 2008, Gurney's incurred a net loss of $886,953. Since 2008, Gurney's operating expenses have increased by over 28%. At December 31, 2008, Gurney's had an accumulated deficit of $55,357,167. Moreover, Gurney's will face a minimum year-end operating deficit of $670,000 for 2009, though that deficit is expected to be much more due to an increase in the number of timeshare units surrendered by timeshare owners unable to pay the maintenance fees and special assessments charged to them. Notwithstanding such deficits, the Monte Trust, acting through defendants Carusona and Bennett, authorized lucrative bonuses, increases in salaries, and perquisites for Montemarano/Cooper Family members.

25. In order to cover these financial losses and shortfalls, the individual defendants have levied substantial special assessments and maintenance fees on the Class A shareholders. In 2009, defendants are charging Class A shareholders a special assessment fee of $2.36 per Class A share owned, for a total of $650,000. In 2008, defendants charged Class A shareholders two special assessments in part to cover Gurney's shortfalls, one for $2.26 per share for a total of $750,000 and another for $6.24 per share for a total of

10

$2,162,472. These assessments would have been more than enough
to satisfy the Trust Mortgage had defendants properly applied
them towards paying off the Trust Mortgage.

26.  Maintenance fees have also been consistently increased.
The maintenance fees charged to Class A shareholders, increased
from $6.40 per share in 2002 to $7.70 per share in 2004 to $8.74
per share in 2007 to $10.98 per share in both 2008 and 2009.
Since 2002, the maintenance fees charged to Class A shareholders
have increased by over 76%.  In January 2009, the individual
defendants also increased the daily rates charged to each Class A
shareholder from $10.50 per day per unit owned to $15.00 per day
per unit owned, an increase in the aggregate of approximately
$95,486.

27.  As a consequence of increases in special assessments
and maintenance fees, many Class A shareholders have been
compelled to surrender their Class A shares, and Leases for the
appurtenant timeshare units.  At the same time, the individual
defendants have failed to make a reasonable effort to re-sell
surrendered units or to sell previously unsold units.

28.  The diminishing ranks of timeshare owners is
demonstrated by the amount of Class A shares outstanding.
Gurney's originally issued 657,900 of its Class A shares.
According to Gurney's financial statements at December 31, 2006,
2007, and 2008, the amounts outstanding of Class A shares were

11

the following: 367,850; 363,000; and 349,300, respectively.  At
this time, timeshare units are being returned or are delinquent,
in record numbers.  The holders of nearly 47% of the originally
sold Class A shares have given up their timeshares.  During the
three-year period 2006-2008, the holders of more than 5% of the
remaining solid nucleus of Class A shares have been forced to
give up their timeshares.

29.  The individual defendants' refusal to pay off the Trust
Mortgage and their failure and refusal to act reasonably in
obtaining buyers of unsold and surrendered units has
significantly increased the financial burden on the remaining
Class A shareholders.  The remaining Class A shareholders are now
responsible to pay the maintenance and assessments for the
returned and unsold shares, effectively causing the remaining
Class A shareholders to pay almost double maintenance, while the
Monte Trust pays nothing for its units; in fact, the timeshare
owners pay for the Monte Trust's units.

30.  Not only have the individual defendants permitted the
Montemarano/Cooper Family to mismanage and operate Gurney's at a
loss solely for their own benefit, but the individual defendants
have done so contrary to the express terms of the Lease contained
within the Offering Plan.  Section 3 of the Lease expressly
states that:

(a)   The Interval Lessor [i.e., Gurney's] shall at its expense use its best efforts to provide the following services: (1) maintenance and management of the resort accommodation; (2) heat, light, power, air conditioning and utilities, etc.; (3) comprehensive casualty, flood, liability, workmen's compensation and other insurance in types and amounts deemed necessary and acceptable by the directors; (4) check-in and check-out service; (5) valet parking; (6) courtesy car to and from local airport and railroad stations on check-in and check-out; (7) twenty-four hour security guards; (8) initial fixtures, furniture and linens described on inventory annexed as Exhibit B (inventory to be taken before and after each use of premises and will vary from unit to unit).

(b)   The Interval Lessor shall use its best efforts to provide the following services at the expense of the Interval Lessee: (1) daily maid/turndown service charged on per diem occupancy basis; (2) telephone and telegraph charged on local, long distance and all toll basis.

(c)   The Interval Landlord at its expense shall use its best efforts to provide the following basic spa services by way of a recreational lease between the Interval Lessor and other commercial tenants: (1) heated salt water pool facilities; (2) men's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (3) women's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (4) seasonal ice skating.

(d)   Other commercial lessees of the Interval Lessor shall provide the following services, to the extent practicable, to the general public and the Interval Lessee on a fee, a la carte basis (1) public restaurant, bar and beverage facilities; (2) seasonal public breach barge, beverage and food facilities; (3) public spa therapeutic treatments and facilities and plans; (4) public spa salon, Institut de Beaute.

**(e)   The covenants by the Interval Lessor herein contained are subject, however, to the discretionary power of the Directors elected by Class A stockholders to determine from time to time what services and what attendance shall be proper in the manner of maintaining**

13

> **and operating the buildings and also what existing services shall be increased, reduced, changed, modified or terminated.** Notwithstanding the aforesaid, at all times, directors may condition availability of such facilities based on emergencies, strikes, non-accessibility, acts of God, or fiscal problems brought on by maintenance collection deficiencies.

(Emphasis added.)

31. The Lease therefore invests plaintiff, as the Class A director, with discretionary power over the maintenance and management of Gurney's. Yet, in spite of this explicit language, the individual defendants have committed waste by permitting the Montemarano/Cooper Family to exercise complete power and authority over the operation and management of Gurney's and its assets solely for the personal benefit of the Montemarano/Cooper Family and the Monte Trust.

32. In further breach of their fiduciary duty, the individual defendants have permitted the Montemarano/Cooper Family to engage in blatant nepotism in their operation and administration of Gurney's. Despite the increases in financial losses and operating expenses suffered by Gurney's, the individual defendants have not made reasonable efforts to reduce costs or to engage new management. Nevertheless, at the same time, the individual defendants have consistently paid themselves and members of the Montemarano/Cooper Family lucrative salaries, bonuses, and other compensation packages. These payments have been made while the Class A shareholders were compelled to pay

14

over $3.5 million in special assessments during the last two years alone to cover the financial losses and budgetary shortfalls caused by defendants' mismanagement of Gurney's and waste of its corporate assets. Moreover, defendants have directed Gurney's to pay the Monte Trust's legal expenses.

33. The individual defendants have each been paid $2,000 per month in fees for serving on the board. Defendant Carusona has received, and continues to receive, an additional $2,500 per month since 2008, as chairman of Gurney's board of directors, totaling $4,500 per month plus expense reimbursements. Defendant Carusona has also received consulting fees in the amounts of $25,531.00, $28,400.00, $49,300.00, and $30,500.00, for the years 2004, 2005, 2006, and 2007, respectively.

34. Although defendant Carusona has received his compensation, he has explicitly directed, without explanation, that plaintiff be denied the same $2,000 per month director's fee as paid to the other directors serving on Gurney's board.

35. The individual defendants have also permitted Gurney's to enter into consulting arrangements with two other corporations that are "related to" Gurney's through their ownership by members of the Montemarano/Cooper Family. Amounts paid to these members of the Montemarano/Cooper Family were approximately $185,000 for the years ended December 31, 2008 and 2007. Lola Cooper Monetemarano, owner of one of those two corporations, while

15

owning the controlling interest in the Monte Trust, received at
least $135,000 per year plus expenses including, it is believed,
the payment of an automobile lease while residing in Henderson,
Nevada.

36.   The related party consulting agreements contain a five
percent annual increase in the contracts through 2011.  The
individual defendants also receive additional "consulting" fees
for supposedly providing advice to Gurney's on various,
undisclosed matters.

37.   In 2007, members of the Montemarano/Cooper Family
received compensation of at least $817,022.43, including
commissions and bonuses.  The director defendants have refused to
disclose the compensation, commission, and bonuses paid to the
Monetemarano/Cooper Family for the years 2008 and 2009.

38.   Gurney's has made payments to the Monte Trust far in
excess of that required to be made pursuant to Section 4.3 of the
First Amended Plan of Reorganization, either as interest or as
additions to principal.

39.   The individual defendants have failed and refused to
provide plaintiff or the other Class A shareholders with any
information regarding: (1) why the individual defendants are
entitled to an additional $2,000 per month in director
compensation while that same compensation is denied to plaintiff
as a board member; (2) the names of individuals who have entered

16

into the consulting agreements with Gurney's, for the years ended December 31, 2008, 2007, and 2006, their relationships to the Montemarano/Cooper Family, and the services that those individuals performed pursuant to those agreements, as well as copies of all such consulting agreements; (3) how any of the compensation paid to the three board members is or has been determined; and (4) the services provided by all board members who were paid fees for acting as "consultants" to Gurney's.

40. Moreover, the individual defendants have continuously refused to provide plaintiff with various books and records that she is entitled to as a director. Notably, the individual defendants have denied and continue to deny plaintiff's requests for the following documents during the relevant time period, among others: copies of board minutes, information regarding salaries, benefits, and other compensation paid by Gurney's to the Montemarano/Cooper Family (including copies of any contracts to which any member of the Montemarano/Cooper Family, or any affiliate thereof, is a party), board members, and other employees; payments made on the mortgages; agreements with beneficial owners of Class B shares; correspondence with real estate brokers in connection with the sale of Gurney's or its shares; documents related to the surrender or foreclosure of timeshare units; and all bankruptcy filings including exhibits.

17

41.  In furtherance of their scheme to deprive plaintiff of the books and records to which she is entitled as a director, defendants have intentionally conducted one or more board meetings without the plaintiff present, and subsequently, refused to provide plaintiff with the minutes of those meetings.  Despite being a director, plaintiff has only been permitted to attend one of the board's monthly board meetings since July 2009.  Further, Gurney's management has been directed by defendant Carusona not to provide plaintiff with any information and that all requests for information must be directed to him.

42.  In refusing to provide plaintiff, and the other Class A shareholders with material information regarding Gurney's operations and accounting to which they are entitled, defendants are forcing plaintiff, and Class A shareholders, to continue paying exorbitant maintenance and assessment fees without adequately disclosing to timeshare owners, how that money is being spent, or even if that money is being spent for the benefit of Gurney's and its timeshare owners.

43.  In sum, defendants, acting in bad faith, have acquiesced in the Montemarano/Cooper Family's deficient operation of Gurney's causing it to incur substantial losses in order to ensure that the Trust Mortgage cannot be satisfied and, consequently, that the Montemarano/Cooper Family maintains absolute control over the valuable property on which Gurney's is

18

situated.   In allowing the Montemarano/Cooper Family to engage in

such misconduct detrimental to Gurney's and the Class A

shareholders, defendants have violated their fiduciary duties and

have permitted the waste of Gurney's assets.

**FIRST CLAIM FOR RELIEF**
**(Against the Individual Defendants**
**for Violation of BCL § 720)**

44.   Plaintiff repeats and realleges each and every

allegation set forth in this complaint.

45.   The individual defendants have breached their fiduciary

duty of loyalty by managing the assets of Gurney's solely for the

benefit of the Montemarano/Cooper Family and the Monte Trust and

for committing corporate waste.

46.   As a result of the individual defendants' breaches of

their fiduciary duty of loyalty, Gurney's has been damaged in an

amount to be proved at trial.

47.   In addition, the individual defendants should be

removed as directors  and a receiver appointed in their stead

until a new board can be elected and qualified.

**SECOND CLAIM FOR RELIEF**
**(Against All Defendants for**
**Common Law Breach of Fiduciary Duty, Waste,**
**and Oppression of Gurney's Class A Shareholders)**

48.   Plaintiff repeats and realleges each and every

allegation set forth in this complaint.

19

49.  The defendants have breached their fiduciary duties and failed to protect the corporate assets of Gurney's from loss or waste, or aided and abetted same, by: (1) refusing to permit plaintiff to determine the necessary services in violation of the Lease; (2) refusing to provide plaintiff with the corporate records to which she is entitled; (3) failing and refusing to make reasonable efforts to liquidate the Trust Mortgage; (4) causing Gurney's to incur unnecessary expenses and to suffer substantial financial losses; (5) failing and refusing to make reasonable efforts to obtain buyers for unsold and returned units; and (6) requiring current holders of units to pay excessive special assessments to cover Gurney's operating losses in order to force holders to surrender their units for the benefit of the Montemarano/Cooper Family and the Monte Trust.

50.  For reasons set forth above, Gurney's Class A shareholders had a reasonable expectation that their ownership interests in Gurney's time-sharing units would result in their receiving a reasonable monetary return or some other form of valuable consideration during the fifty-year term.  Thus, defendants' breaches of fiduciary duty, arising from their waste and misappropriation of Gurney's assets in order to enrich themselves and the Montemarano/Cooper Family at the expense of Gurney's Class A shareholders, oppressed Gurney's shareholders, and denied them their reasonable expectations.

20

51.  As a result of defendants' breaches of their fiduciary obligations, Gurney's has been damaged in an amount to be proved at trial.

52.  In addition, the individual defendants should be removed as directors  and a receiver appointed in their stead until a new board can be elected and qualified.

### THIRD CLAIM FOR RELIEF
### (Against All Defendants for Injunctive Relief)

53.  Plaintiff repeats and realleges each and every allegation set forth in this complaint.

54.  Plaintiff has no adequate remedy at law.

55.  Unless the individual defendants and the Monte Trust are enjoined from usurping the prerogatives of plaintiff, as the Class A director, the Lease will continue to be violated and Class A shareholders economically coerced into surrendering their shares.

WHEREFORE, plaintiff demands judgment, in plaintiff's favor and in favor of Gurney's, as appropriate, against both individual defendants, jointly and severally, and the Monte Trust, as follows:

A.    finding that the individual defendants and the Monte Trust have breached their fiduciary duties to Gurney's and its Class A shareholders and are jointly and severally liable for all damages caused by their actions;

21

B.    enjoining defendants from further breaches of their fiduciary duties and removing the individual defendants as directors; and permanently enjoining the Monte Trust from appointing any new members of the board;

C.    preliminarily and permanently enjoining defendants from interfering with plaintiff's right, pursuant to Section 3(e) of the Lease, to control the level of services provided by the nominal defendant;

D.    appointing a receiver for the management of Gurney's until two new board members are elected by the Class A shareholders;

E.    ordering the director defendants to provide an accounting of Gurney's assets and operations;

F.    ordering the director defendants to provide plaintiff with all documents she has previously requested;

G.    awarding Gurney's compensatory damages against the Monte Trust, in an amount to be determined at trial, for the amount of funds that the Monte Trust received from Class A shareholders in excess of what it was entitled to receive, together with pre-judgment and post-judgment interest at the maximum rate allowable by law;

H.    awarding plaintiff the costs and disbursements of this action, including reasonable allowances for attorneys' and experts' fees and expenses; and

22

     I.   granting such other or further relief as may be just and proper under the circumstances.

Dated: November 20, 2009

                               HARWOOD FEFFER LLP

By:    _____

                               Joel C. Feffer
                               Daniella Quitt
                               488 Madison Avenue, 8th Floor
                               New York, New York 10022
                               Tel: (212) 935-7400
                               Fax: (212) 753-3630

                               Attorneys for Plaintiff

## VERIFICATION

STATE OF CONNECTICUT )
COUNTY OF *Fairfield* )   ss.: *Weston*

Linda Benjamin, being duly sworn, deposes and says:

I am a plaintiff in the within action.  I have read the foregoing complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
Linda Benjamin

Sworn to before me this
20 day of ~~October~~ Nov, 2009

_____
Notary Public

**ELIZABETH LEE**
*Notary Public*
My Commission Expires 09/30/2011

 RECYCLED

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

LINDA BENJAMIN,

                 Plaintiff,

    -against-

THOMAS CARUSONA, CHRISTOPHER
BENNETT, and GURNEY'S INN CORP.
LIQUIDATING TRUST,

                 Defendants,

GURNEY'S INN RESORT & SPA LTD.,

               Nominal Defendant.

------------------------------------X

09 Civ. 9722

OPINION

A P P E A R A N C E S:

         Attorneys for Plaintiff

         HARWOOD FEFFER LLP
         488 Madison Avenue, 8th Floor
         New York, NY  10022
         By:  Joel C. Feffer, Esq.
              Daniella Quitt, Esq.

         Attorneys for Defendants

         EATON & VAN WINKLE LLP
         3 Park Avenue
         New York, NY  10016
         By:  Ted G. Semaya, Esq.
              Joseph T. Johnson, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 4-22-10

Sweet, D.J.


Plaintiff Linda Benjamin ("Benjamin" or the "Plaintiff") has moved under Fed. R. Civ. P. Rule 65 for a preliminary injunction to bar the Defendants Thomas Carusona ("Carusona") and Christopher Bennett ("Bennett") (collectively, the "Defendant") from seeking indemnification for expenses in connection with this action, to bar the nominal Defendant Gurney's Inn Resort & Spa Ltd. ("Gurney's") (collectively, the "Defendants") from paying any such indemnification, and to bar the Defendants from taking any action to amend either the bylaws or certificate of incorporation of Gurney's.  Upon the findings and conclusions set forth below, the motion to enjoin indemnity is denied, and the motion to bar amendment to the bylaws and certificate of incorporation is denied.


## The Parties


Benjamin is a Connecticut resident and the only Class A director of Gurney's.


Carusona and Bennett are the other two members of the board of directors of Gurney's.  Gurney's was formed on

1

July 1, 1981 and is located at 290 Old Montauk Highway,
Montauk, New York 11954.  According to the Complaint,
Gurney's primary sources of income included funds derived
from the sale of unsold timeshare units and the collection
of maintenance fees from owners of timeshare units, as well
as revenue from the restaurant, spa, and rentals.  Gurney's
filed for Chapter 11 bankruptcy in 1994 and was reorganized
in 1999.  (Compl. ¶ 8.)

## Prior Proceedings

Benjamin filed her Complaint on November 23,
2009, alleging a breach of fiduciary duty under Section
720(b) of the New York Business Corporation Law ("BCL") and
seeking a declaratory judgment, an injunction, the
reorganization of the board of directors, an accounting and
damages.  (Compl. ¶¶ 2, 3.)  The Complaint alleges a first
cause of action for violation of BCL § 720 (Compl. ¶¶ 44-
47), a second cause of action for common law breach of
fiduciary duty (Compl. ¶¶ 48-52) and a third cause of
action for an injunction (Compl. ¶¶ 53-55).

The instant motion was heard on February 12,
2010.

2

## The Facts

The facts have been set forth in the affidavits submitted by the parties and are not in dispute except as noted below.

Benjamin was elected to the board as a Class A director in 2009. She has been a timeshare owner since the late 1980s.

Gurney's was incorporated as a timeshare cooperative corporation in 1981 and first sold timeshare units in 1982. The Class A timeshare owners paid approximately $50,000,000 to buy their units as a result of the conversion of Gurney's into cooperative ownership.

Gurney's Certificate of Incorporation, as amended, provides for a capital structure consisting of 750,000 Class A shares and 2,700,000 Class B shares. Most of the authorized Class A shares were issued to timeshare owners and all of the authorized Class B shares were issued to the holders of the purchase money mortgage, including

3

Gurney's Inn Corp. Liquidating Trust (the "Liquidating Trust").

Following Gurney's conversion to cooperative status, Gurney's board of directors was controlled by its institutional mortgagee until 1991.  From that point on, the Liquidating Trust held all 2,700,000 Class B shares and controlled Gurney's board of directors.  According to Benjamin, the Liquidating Trust, in turn, was and is controlled by the Montemarano/Cooper Family.  (In 1990, Nicholas Montemarano, the now-deceased family patriarch, married Lola Cooper; this group is referred to as the "Montemarano/Cooper Family".)

Although holders of the Class B shares now control the board of directors, the holders of outstanding Class A shares are required to pay all of Gurney's expenses.  The form timeshare Interval Proprietary Lease (the "Lease") provides, in paragraph 3(e), the following:

> The covenants by the Interval Lessor herein contained are subject, however, to the discretionary power of the Directors elected by Class A stockholders to determine from time to time what services and what attendance shall be proper in the manner of maintaining and operating the buildings and also what existing services shall be increased, reduced, changed, modified or terminated.  Notwithstanding the aforesaid, at

4

all times, directors may condition availability
of such facilities based on emergencies, strikes,
non-accessibility, acts of God, or fiscal
problems brought on by maintenance collection
deficiencies.

According to Benjamin, following Gurney's

cooperative conversion in 1982, the Montemarano/Cooper

Family retained operating control over Gurney's. In 1994,

Gurney's filed for protection under Chapter 11 of the

Bankruptcy Code and emerged from Chapter 11 in 1999.

The First Amended Plan of Reorganization (the

"Reorganization Plan") provided that:

(a) holders of Class A and Class B shares

retained their interests unimpaired (section 3.2);

(b) the institutional first mortgage was changed

to a $3,500,000 principal, ten-year note, bearing interest

at 10% per annum (section 4.2);

(c) the purchase money second mortgage, held by

the Montemarano/Cooper Family through the Liquidating

Trust, was reduced to a principal of $2,700,000, with

repayment of principal and payment of interest restricted

5

and possibly abated in the event Gurney's operating cash flow in insufficient, as defined in the Reorganization Plan (section 4.3);

      (d)  the Liquidating Trust also received "a future interest in 50% of all unsold shares and proprietary leases, which future interest shall mature on the earlier of the date of the sale of the real property or December 31, 2032" (section 4.8); and

      (e)  Article III, Section 2 of Gurney's Bylaws was amended to permit the Class A shareholders to elect one director and the Class B shareholders the right to appoint the remaining directors (section 6.2(b)); no other amendment to the Bylaws was authorized.

      Gurney's property occupies more than ten acres of valuable oceanfront property in Montauk, Long Island. Property owned by Bernard Madoff, situated nearby and consisting of only one and a half acres, recently sold for $9,400,000.

      According to Benjamin, the Liquidating Trust, as holder of all of the Class B shares, through its appointed

6

directors, sought to force holders of Class A shares to
surrender their shares as well as the appurtenant Leases in
order to permit a sale of Gurney's.

According to Paul Montemarano ("Montemarano"),
the general manager of Gurney's, Nicholas Montemarano
acquired Gurney's in 1956 and owned it as a family business
until it was converted to time-share ownership (one of the
first in New York State) in 1981 to obtain financing, under
an Offering Plan. According to Montemarano, 85% of the
units were sold over the succeeding nine years, resulting
in 536,000 Class A shares. Because the amount of
outstanding Class A shares was reduced as timeshare owners
abandoned their interests, at the end of 2008 349,300 Class
A shares remained outstanding. Timeshare owners are
assessed maintenance and special assessments on a per-share
basis. Shares are assigned on a particular week and unit.
According to Montemarano, Nicholas Montemarano transferred
all 2,700,000 Class B shares to Carusona and Bennett in
2007, before he died.

Also, according to Montemarano, active opposition
to the management was initiated in 2008 formally by Ms.

7

Patricia Boffa, a timeshare owner and Class A shareholder, by the formation of Gurney's Timeshare Owners, Inc.

On November 28, 2008, the office of the Attorney General sent a letter to counsel for Gurney's delineating certain of the rights of the Class A shareholders and requesting that a letter be sent to the shareholders advising them of these rights and requesting various communications and notices.

According to Montemarano, Gurney's has increased its revenues since emerging from bankruptcy but is in need of capital improvement of $20 million, assessments are contemplated and interest in purchasing the property is being explored.  According to Montemarano, the underwriters of the Directors and Officers policy obtained by Gurney's have declined coverage for the expenses and any liability of Carusona and Bennett.

Bylaws amendments are contemplated to provide that Class A and Class B shareholders vote together as a single class and that Gurney's may indemnify its directors.

8

Montemarano wrote to the Class A shareholders on December 30, 2009 with respect to this action, stating:

> As it now stands, all the costs of this litigation and associated indemnification will be paid by Gurney's and ultimately to the Class A shareholders.
>
>            \* \* \*
>
> It is very likely that the costs of Ms. Benjamin's litigation will result in a special assessment later this year.

On January 12, 2010, Carusona wrote to the shareholders stating:

> The Bylaws of Gurney's are clear. The Directors of the corporation are to be indemnified for the complete cost of the litigation, including all attorneys' fees. Linda Benjamin's lawsuit will result in additional expenses to this corporation and will probably result in a special assessment unless withdrawn soon.

According to Bennett, Gurney's has sufficient cash flow to maintain its operations through October, 2010, and that board has not considered imposing a special assessment to indemnify the directors.

Both Carusano and Bennett have given undertakings to repay any indemnification in the event that they are found not to be entitled to indemnification.

9

According to Benjamin, the Montemarano/Cooper Family has received improper benefits, and the Defendants are acting to promote the surrender of Class A Shares.

## The Preliminary Injunction Standard

A party seeking a preliminary injunction must show: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242 (2d Cir. 2009) (quoting Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)).

Because irreparable harm "is 'the single most important prerequisite for the issuance of a preliminary injunction,'" the "'moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-

10

34 (2d Cir. 1999) (citations omitted).  To establish
irreparable harm, the injury must be "neither remote, nor
speculative, but actual and imminent."  Shapiro v. Cadman
Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).  In
addition, the injury "must be one requiring a remedy of
more than mere money damages."  Third Church of Christ v.
City of New York, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008)
(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888
F.2d 969, 975 (2d Cir. 1989)).

## Immediate and Irreparable Injury Has Not Been Established

It is Benjamin's contention that the Defendants
have threatened the Class A shareholder with the imposition
of legal fees and additional "special assessments" and that
since the Class A shareholders' interest in the timeshares
is unique, money damages cannot compensate them.
Deprivation of an interest in real property has been found
to constitute irreparable harm.  See, e.g., Third Church of
Christ, 617 F. Supp. 2d at 215 (church faced irreparable
harm because absent relief it would be unable to maintain
its operating expenses and be forced to sell its building).

11

She also contends that the course of conduct of the Defendants will accelerate the rate at which the Class A shareholders will abandon their units, thereby increasing her aliquot share of the maintenance and aiding the Defendants' efforts to sell the property.

### a.   The Request to Enjoin Director Indemnification

Benjamin's principal contention is that Article VII of the Bylaws of the corporation provides that the cost of indemnification of the directors "shall be paid exclusively from the proceedings of the original stock offering" and that the Montemarano/Cooper Family received such proceeds.  According to Montemarano, the Montemarano/Cooper Family did not receive the proceeds but in view of the bankruptcy, the proceeds of the offering no longer exist as an identifiable fund.

However, the Article VII Bylaws also state:

> Nothing contained in this provision shall limit any right of indemnification to which any director or any officer may be entitled to by contract or under any law now or hereinafter enacted.

12

Under BCL § 723(c), a company may advance defense
costs to a sued director upon the posting of an
undertaking.  In the event of a finding against a director
of bad faith or dishonesty, however, no indemnification may
be had and any advanced expenses must be repaid to the
company.  BCL §§ 721, 725(a).  Carusona and Bennett have
provided the undertaking required under BCL §§ 723(c) and
725(a) for advancement of defense costs, namely, that they
will repay Gurney's if it is ultimately proven that they
are not entitled to indemnification.

In addition, the Class A shareholders under
Paragraph 3(e) of the Lease are granted control of the
services for which they are liable.

Under these circumstances, Benjamin has failed to
establish any basis for an assessment of such immediacy as
to require injunction.  It is presumed without deciding
that such assessment, if made, would be challenged, raising
a serious question as to its enforcement.

13

b.    The Request to Enjoin Bylaw Amendment

Similarly, Benjamin has not established the
immediacy of the suggested bylaw amendment. In view of
what appears to be the requirement in Article XII providing
for amendment only after the cancellation of all Class B
stock, again serious questions would be presented upon an
effort to adopt the suggested bylaw amendment.

Furthermore, it is the position of Benjamin that
the Certificate of Amendment of the Certificate of
Incorporation in Article Fourth(b) contains a similar
requirement. The phrase "[s]ubsequent to cancellation of
all Class B shares" did not exist in the original
Certificate of Incorporation and was added by amendment in
connection with the cooperative conversion, presumably on
the insistence of the Attorney General's office, to protect
the Class A shareholders. Any amendment to the Certificate
of Incorporation that would render this provision of the
Certificate of Incorporation meaningless would presumably
be subject to challenge as compromising the property
interests of the Class A shareholders.

14

However, on this record the immediacy of the requested injunction has not been established and the request will be denied.

It may be worth noting that since the economic interest of both sides to this dispute are involved, a resolution to the capital needs of Gurney's, sooner rather than later, would be in the interests of all concerned.  A cooperative effort to that end might provide the best resolution of the instant controversy.

**Conclusion**

The motion of Benjamin for injunctive relief at this time is denied.

So ordered.

New York, NY
April 2/ , 2010

ROBERT W. SWEET
U.S.D.J.

15