# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 10-CV-3993 (JFB) (ARL)

GURNEY'S INN RESORT & SPA LTD.,

Plaintiff,

VERSUS

LINDA BENJAMIN, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
October 13, 2010

JOSEPH F. BIANCO, District Judge:

Plaintiff Gurney's Inn Resort & Spa Ltd. ("plaintiff" or "Gurney's") commenced this action in New York State Supreme Court, Suffolk County, against Linda Benjamin ("Benjamin"), Thomas Carusona ("Carusona"), and Christopher Bennett ("Bennett") seeking a declaratory judgment to determine the respective rights of the members of Gurney's Board of Directors ("the Board").[1] Benjamin removed the action to this Court, and plaintiff has moved to remand the case to state court. For the reasons set forth herein, the Court finds that realignment of the parties is proper, thus creating complete diversity between the parties and giving this Court subject matter jurisdiction over this action. Accordingly, insofar as the Court has federal jurisdiction after such realignment, the Court denies plaintiff's motion to remand this case to state court.

## I. BACKGROUND

On August 13, 2010, Gurney's filed a complaint against the three members of Gurney's Board of Directors—Benjamin, Carusona, and Bennett—seeking a declaratory judgment to determine the respective rights of the Board members to vote concerning whether to increase, reduce, change, modify, or terminate services or expenditures at Gurney's. (Compl. ¶ 1.) Gurney's alleges that Benjamin has taken the "erroneous position that she had the exclusive right" to vote on such issues (*id.* ¶ 3), thereby harming Gurney's by undermining the ability of the

---

[1] Benjamin, Carusona, and Bennett are the sole members of Gurney's Board of Directors.

Board to function. (*Id.* ¶ 56.) Gurney's, however, believes that each member of the Board had equal voting rights and seeks a declaratory judgment to that effect. (*Id.* ¶ 5.) Significantly, Carusona, acting in his capacity as Gurney's President, verified the complaint against himself, Benjamin, and Bennett. (*See* Compl. Verification.)

Prior to the commencement of this action, Benjamin had filed a complaint on November 23, 2009 in the Southern District of New York ("the SDNY action") naming Carusona and Bennett as defendants and Gurney's as a nominal defendant. Benjamin brought the SDNY action pursuant to Section 720(a) of the New York Business Corporation Law, alleging that Carusona and Bennett had breached their fiduciary duties to Gurney's and seeking, *inter alia*, a declaratory judgment, a reorganization of the Board, an accounting, damages, and a "permanent injunction . . . prohibiting defendants from interfering with plaintiff's right . . . to control the level of services provided by Gurney's." (Notice of Removal Ex. B ¶¶ 2-3.) At issue in the SDNY action is, in part, the same contractual provision relied upon by Gurney's in its complaint in the current action. (*Compare id.* ¶ 30 *with* Gurney's Compl. ¶ 21.) Neither party disputes the overlap between the two actions.

Benjamin removed the instant action to this Court on September 1, 2010. Jurisdiction was asserted solely on the basis of diversity. (Notice of Removal ¶ 10.) After removal, Benjamin requested a pre-motion conference in anticipation of filing a motion to transfer venue to the Southern District of New York, where her action against Carusona and Bennett was pending. (*See* ECF No. 2.) Gurney's, however, opposed Benjamin's request to file a motion to transfer on the grounds that removal of the action was improper because of lack of complete diversity between the parties and because Benjamin failed to join defendants Carusona and Bennett in the removal. The parties agree that, as currently aligned, there is no complete diversity. Benjamin argues, however, that the parties should be realigned as per the alignment in the SDNY action, where there is diversity between Benjamin (a Connecticut resident), on the one hand, and Carusona (a New York resident), Bennett (a New York resident), and Gurney's (a New York corporation), on the other hand.

At the pre-motion conference, the Court determined that it had to address the remand issue prior to addressing Benjamin's proposed motion to transfer and, accordingly, set a briefing schedule for the motion to remand.[2] The Court treated Gurney's September 7, 2010 letter opposing Benjamin's request to file a transfer motion as Gurney's motion to remand. Benjamin filed her opposition on October 1, 2010, and Gurney's filed its reply, which was joined by Carusona, on October 5,

---

[2] The Court addresses Gurney's motion to remand before addressing Benjamin's proposed motion because the remand motion challenges the Court's jurisdiction to hear this case. If the Court does not have jurisdiction, it does not have the power to decide Benjamin's motion. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("Because a holding that the district court lacked removal jurisdiction would end our inquiry, we first address the district court's denial of [plaintiff's] motion to remand the case to state court for lack of jurisdiction."); *see also Cotter v. Milly LLC*, No. 09 Civ. 04639 (PGG), 2010 WL 286614, at *2 (S.D.N.Y. Jan. 22, 2010) ("Because the issue of proper removal involves this Court's subject matter jurisdiction, it must be decided prior to [defendant's] motion to dismiss under Rule 12(b)(6).").

2

2010. Oral argument was held on October 8, 2010, during which the Court denied Gurney's motion to remand and stated that a written opinion, as set forth herein, would follow.

## II. DISCUSSION

### A. Applicable Law

#### (1) Motion to Remand

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (internal quotation marks and citations omitted). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2006).

Additionally, "[a]lthough there is no statutory requirement that all defendants either must join the petition for removal or consent to removal, courts have consistently interpreted 28 U.S.C. § 1446 as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the 'rule of unanimity.'" *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006) (citations omitted); *see also Sleight v. Ford Motor Co.*, No. 10-cv-3629 (BMC), 2010 WL 3528533, at *1 (E.D.N.Y. Sept. 3, 2010) ("[I]n cases where there are multiple defendants, the Rule of Unanimity requires that 'all named defendants over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper.'" (quoting *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006) (additional citations omitted)); *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) ("There is general agreement among the courts that all the defendants must join in seeking removal from state court." (internal quotation marks and alterations omitted)). However, courts may excuse the failure to join all defendants in the removal petition or to otherwise obtain their consent for removal where the non-consenting defendants "have not been served, [are] unknown defendants, [or have been] fraudulently joined." *Sherman*, 528 F. Supp. 2d at 330. Likewise, courts also have excused noncompliance with the rule of unanimity where the parties were misaligned, and the defendants who did not join in the removal were more properly aligned with the interests of the plaintiffs than with those of the defense. *See, e.g.*, *Schouman v. Schouman*, No. Civ. A. 96-11588-REK, 1996 WL 721195, at *4 (D. Mass. Dec. 10, 1996) (finding consent of all defendants not required for removal where defendants' interests were "more closely

3

aligned with [those] of the plaintiff"); *Still v. DeBuono*, 927 F. Supp. 125, 130 (S.D.N.Y. 1996) (excusing failure to join all respondents where "the parties' alignment is misleading since State respondents' real interest lies in *petitioners* prevailing").

(2) Diversity Jurisdiction

It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). In other words, if any plaintiff shares citizenship of the same state as any defendant, complete diversity does not exist, and diversity jurisdiction is lacking. However, as the Second Circuit has made clear, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). Furthermore, in order for there to be diversity jurisdiction, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a).

In analyzing whether subject matter jurisdiction exists, the Court is permitted to look to materials outside of the pleadings. *See Bldg. & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although [the district court's] ruling required [it] to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction." (citing *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002))); *see also Pampillonia*, 138 F.3d at 461-62 (looking to affidavits on removal petition to determine whether party had been fraudulently joined). "Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (citing *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957) (looking to information contained in affidavits submitted in support of a motion to remand to determine removability), and *Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir. 1985) (holding it was proper for the district court to look to a motion to remand and removal petition to determine removability)).

(3) Realignment

"In assessing the alignment of the parties, '[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who [are] defendants.'" *Garbers-Adams v. Adams*, No. 10-cv-726 (RPP), 2010 WL 2710622, at *2 (S.D.N.Y. July 8, 2010) (quoting *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69 (1941)). Instead, it is the duty of the Court "to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis*, 314 U.S. at 69 (internal quotation marks and citation omitted). The purpose of the realignment doctrine "is to ensure that the case truly involves the kind of adversarial relationship constitutionally required in a case or controversy in the federal courts." James W. Moore et al., *Moore's Federal Practice* ¶ 0.74[1], at 771 (2d ed. 1993) (cited with approval and quoted in *Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1994)).

4

To determine the proper alignment of the parties, the Second Circuit has adopted a "collision of interests" test, which "require[s] the existence of an actual, substantial controversy" between the parties. *Md. Cas. Co.*, 23 F.3d at 622. In other words, a court must "examine 'the realities of the record' to discover the 'real interests' of the parties," and must conclude "that there is a *bona fide* controversy between, as the statute commands, citizens of different states." *Id.* at 623 (quoting *City of Indianapolis*, 314 U.S. at 69). "This approach allows the courts 'to consider the multiple interests and issues involved in the litigation.'" *Garbers-Adams*, 2010 WL 2710622, at *2 (quoting *Md. Cas. Co.*, 23 F.3d at 622); *see also Fed. Ins. Co. v. Safeskin Corp.*, No. 98-cv-2194 (DC), 1998 WL 832706, at *1 (S.D.N.Y. Nov. 25, 1998) ("In *Maryland Casualty*, the Second Circuit adopted the 'collision of interests' test, which requires 'the existence of an actual, substantial controversy, or a collision of interests,' between citizens of different states. The Second Circuit rejected the 'primary purpose' test, which aligns parties in accordance with the 'primary dispute in the controversy.' Rather, the 'broader' and 'more flexible' 'collision of interests' test permits courts 'to consider the multiple interests and issues involved in the litigation.'" (quoting *Md. Cas. Co.*, 23 F.3d at 622)). *See generally Fed. Ins. Co.*, 422 F. Supp. 2d at 389 n.20 (noting Circuit split on question of whether to apply "primary purpose" or "substantial dispute" test to determine realignment). Although diversity questions must be resolved "at the time of the filing of the complaint," the "collision of interests" test requires courts to "look[] to the actual interests of the parties at that time." *Oppenheimer & Co., Inc. v. Neidhardt*, No. 93-cv-3854 (SS), 1993 WL 546673, at *4 (S.D.N.Y. Dec. 30, 1993).

The issue of realignment is often raised in the context of a motion to dismiss for lack of subject matter jurisdiction, but it also applies in the removal context to determine either whether complete diversity exists or whether the failure to join all defendants in the removal should be excused. *See, e.g., Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, Nos. 09-3571, 09-3648, --- F.3d ----, 2010 WL 3619803, at *3-4 (6th Cir. Sept. 20, 2010) (holding that district court's realignment of defendant as plaintiff to create complete diversity on removal petition was proper); *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) (noting that realignment is not "associated *exclusively* with diversity jurisdiction" and instead "represents a broader principle of judicial interpretation of statutes conferring jurisdiction in federal courts, where the statutory conferral of jurisdiction is predicated upon the adversarial relationship of the parties. . . . [W]here party designations have jurisdictional consequences, we must align the parties before determining jurisdiction." (citing *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574 (1954) (realigning parties for jurisdictional analysis under the removal statute)) (additional citations and internal quotation marks omitted)); *Peters v. Standard Oil Co. of Tx.*, 174 F.2d 162, 163 (5th Cir. 1949) (realigning defendant as plaintiff to create diversity jurisdiction for removal purposes); *Green Tree Fin. Corp. v. Arndt*, 72 F. Supp. 2d 1278, 1282 (D. Kan. 1999) ("Realignment is usually associated with a federal court's attempt to discern whether diversity jurisdiction is proper. The principle has also been employed by numerous courts in the removal context." (collecting cases)); *Schouman*, 1996 WL 721195, at *4 ("Consent of all defendants [to removal under § 1441] is also not required when the case involves 'separate and

5

independent' causes of action against different defendants, and when an examination of a defendant's 'real' interests reveals a misalignment of the parties. Where one defendant's interests are adverse to that of the other, and are in fact more closely aligned with that of the plaintiff, a court will not allow artful pleading to defeat the removal jurisdiction granted by Congress." (citations omitted)); *Still*, 927 F. Supp. at 131 ("Due to the harmony of interests between petitioners and State respondents in this case, the court realigns State respondents as petitioners for purposes of removal. Thus the removal petition was not defective because of State respondents' failure to join in it."); *Oppenheimer & Co., Inc.*, 1993 WL 546673, at *3 ("Under 28 U.S.C. § 1441, all defendants must join in a petition for removal. . . . The Second Circuit has held that where the removal jurisdiction of a federal court is invoked on the basis of diversity, the parties should be aligned according to their actual interests. Therefore . . . 'misaligned parties may be realigned,' and realigned parties need not have joined in a removal petition where a defendant below is properly re-aligned as a plaintiff." (internal citations omitted)); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14B Fed. Prac. & Proc. Juris. § 3723 (4th ed.) ("Before determining removability under Section 1441(b) on the basis of diversity of citizenship jurisdiction, a district court will realign the parties according to their true interests in the outcome of the litigation, as it would were the case originally brought in the federal court.").

Moreover, as certain of the above-cited cases indicate, realignment may be used to either create or destroy diversity. *See Safeco Ins. Co. of Am. v. City of White House, Tn.*, 36 F.3d 540, 545 (6th Cir. 1994) ("A plaintiff's alignment of the parties . . . is not determinative. In considering whether there is complete diversity, a federal court must look beyond the nominal designation of the parties in the pleadings and should realign the parties according to their real interests in the dispute. Realignment, then, may create or destroy diversity jurisdiction."); *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 295-96 (9th Cir. 1989) ("Realignment by the court of the parties has often been used to prevent the sham creation[] of diversity jurisdiction. . . . It has been found not inappropriate to permit realignment with another result—the creation of diversity jurisdiction." (citations omitted)); *Peters*, 174 F.2d at 163 (creating diversity in removal context); *Oppenheimer & Co., Inc.*, 1993 WL 546673, at *4-5 (realigning defendant as plaintiff to establish diversity jurisdiction for purposes of removal).[3]

---

[3] Some courts have expressed reservations about realigning parties to create diversity on a removal petition. *See Huntsman Corp. v. Int'l Risk Ins. Co.*, No. H-08-1542, 2008 WL 4453170, at *6 (S.D. Tx. Sept. 26, 2008) ("After reviewing the cited authorities and conducting an independent search for relevant case law, this court concludes that while there is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate when diversity was not present when the action was removed, the trend in this circuit disapproves of using realignment after removal to cure a defect in removal jurisdiction."); *Agrella v. Great Am. Ins. Cos.*, No. 99-c-5309, 1999 WL 1101319, at *3 (N.D. Ill. Nov. 29, 1999) (noting that "[r]ealignment here would run counter to the policy of narrow construction of diversity claims"). However, the Court finds that the facts of these cases are distinguishable from the instant case. In *Agrella*, 1999 WL 1101319, at *3, for example, the court found that there was no basis for realignment because the co-defendants were not antagonistic to each other but were, in fact,

## B. Analysis

Benjamin removed this case to federal court solely on the basis of diversity jurisdiction.[4] There is no dispute that, as currently aligned, complete diversity is lacking. Nor is there any argument that defendant Carusona did not join in, and does not consent to, the removal of this case from state court.[5] Generally, either of these defects

---

antagonistic to the plaintiffs. In addition, *Huntsman* involved a third-party defendant's attempt to realign itself to create diversity, which is not the factual scenario here. Accordingly, the Court declines to adopt these other courts' reasoning in reaching its holding in this case and, instead, agrees with the numerous courts that have held that realignment may be used to either create or destroy diversity.

[4] The Court notes that the notice of removal alleges that the amount in controversy exceeds $75,000, and none of the parties attempt to argue that this requirement is not met in this case. The Court also concludes that this requirement is met based upon its independent review of the record before the Court. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Correspondent Servs. Corp. v. First Equities Corp. of Fl.*, 442 F.3d 767, 769 (2d Cir. 2006) (internal quotation marks and citation omitted). That amount is "calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (internal quotation marks omitted); see also *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) ("Because that amount is measured from the plaintiff's perspective, the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted."). Here, no specific facts are alleged in the notice of removal to support the statement of the jurisdictional amount. However, "[w]here the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (addressing motion to remand); see also *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 298 (2d Cir. 2000) (where record did not establish whether amount in controversy requirement was satisfied, remand required to determine whether removal of action was proper); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 527 (S.D.N.Y. 2008) ("If the initial pleadings and petition for removal are inconclusive as to the value of the controversy, the court may look to the moving papers.") (internal quotation marks and citations omitted); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 72-73 (D. Conn. 2008) (looking beyond the pleadings where complaint and removal petition contain insufficient information to establish amount in controversy). In the instant case, it is alleged in the complaint that the dispute regarding the respective voting rights of the Board of Directors has seriously undermined Gurney's ability to "carry out basic corporate decisions" (Compl. ¶ 56) and that Gurney's "is being gravely harmed as a result of this dispute." (*Id.* ¶ 58). In addition, it is asserted in the plaintiff's September 28, 2010 letter to the Court that Gurney's solvency may be contingent upon this control issue and that, among other things, the collection of over $500,000 in special assessments from timeshare owners is being jeopardized by this dispute. (*See* Pl.'s Sept. 28, 2010 Letter, Ex. B.) Thus, there is no question that, from plaintiff's standpoint, the value of the object of this dispute—namely, voting control over plaintiff's services and expenditures—is in excess $75,000.

[5] As counsel for Gurney's acknowledged during oral argument, only Benjamin and Carusona were served in this action. Accordingly, because

7

in the removal petition would warrant remanding the action to state court.

Benjamin argues, however, that the Court should realign the parties to reflect their true interests in the litigation, thus curing the lack of complete diversity and excusing Benjamin's failure to obtain Carusona's consent to remove. Specifically, Benjamin contends that the "actual controversy" lies not between Gurney's and the members of the Board, but between Benjamin, on the one hand, and Carusona and Bennett, on the other. (Notice of Removal ¶ 10.)

As an initial matter, the Court notes that, despite plaintiff's claims to the contrary, Benjamin's argument is not that Carusona and Bennett were "fraudulently joined" in the action. Fraudulent joinder occurs when, for the purposes of destroying diversity jurisdiction, a plaintiff joins a party who has "no real connection with the controversy." *Pampillonia*, 138 F.3d at 460-61. Such is not the case here. Indeed, both parties agree that Carusona and Bennett are necessary to the action, albeit for slightly different reasons.[6]

Instead, Benjamin contends that Carusona and Bennett should be parties in this case but that their alignment in the case as co-defendants with Benjamin is improper. (*See* Def.'s Opp. at 16-17; Notice of Removal ¶ 10.)[7] The Court agrees. In this case, Gurney's is not acting as a neutral party merely seeking to resolve a conflict between deadlocked Board members in any way a court sees fit. Rather, in its complaint, Gurney's takes the specific position that a court "should issue a declaratory judgment that Benjamin, Carusona and Bennett *have equal voting rights* with respect to all matters presented to the Board of Directors." (Compl. ¶ 5 (emphasis added).) This position is directly contrary to Benjamin's position that she has the exclusive right to vote on certain issues, but in no way conflicts with Carusona's and Bennett's interests, which clearly are to secure their own voting rights as directors of the Board. (*See* Compl. ¶¶ 3-4 ("Benjamin has taken the erroneous position that she has the exclusive right to determine whether to reduce, change, modify or

---

defendant Bennett has not been served, this Court will disregard Bennett's failure to join in the removal of this case. *See Sherman*, 528 F. Supp. 2d at 330 (noting exception to rule of unanimity where defendant has not been served).

[6] Gurney's argues that Carusona and Bennett are necessary parties because their substantive rights as directors of Gurney's will be affected by the outcome of the declaratory judgment action. In contrast, Benajmin contends that Carusona and Bennett are necessary because Benjamin's understanding of their voting rights as Board members is directly in conflict with the understanding of Carusona and Bennett. In any event, the specific positions of the parties on this point is not significant, because it is clear that Carusona and Bennett are necessary parties to this action.

[7] Benjamin also advanced the rather unique argument that, in essence, Gurney's is an unnecessary party because it "has no claim against the directors." (Pl.'s Opp. at 2.) The Court rejects this argument. The flaw in Gurney's complaint is not that it cannot state a claim against *any* directors—indeed, Gurney's has clearly asserted that an actual controversy exists between it and Benjamin, insofar as Benjamin's allegedly "erroneous position that she ha[s] the exclusive right" to vote on certain issues (Compl. ¶ 3) has caused harm to Gurney's by undermining the ability of the Board to function. (*Id.* ¶ 56). Instead, as discussed herein, the error in the complaint is that Gurney's has aligned itself against Carusona and Bennett, with whom its interests are completely aligned.

8

terminate services or expenditures at Gurney's and that Carusona and Bennett have no right to vote concerning such matters. However, Gurney's By-Laws and organizational documents plainly provide that Benjamin, Carusona and Bennett have equal voting rights . . . .").) Thus, Carusona's and Bennett's interests undoubtedly lie in Gurney's prevailing on this claim.

Although it is true that mere agreement between opposing parties "in one respect"[8] is not sufficient to support realignment, here, it is clear that the true "collision of interests" exists not between Gurney's and all three directors, but between Gurney's, Carusona, and Bennett, on the one hand, and Benjamin, on the other hand. In other words, Gurney's and Carusona are not aligned in only one respect; rather, they are aligned in *all* respects such that there is simply no dispute or controversy between them. Indeed, Gurney's entire complaint is focused on Benjamin and how her actions, and her actions alone, are harming Gurney's. (*See, e.g.*, Compl. ¶¶ 56-58 ("Benjamin's far-reaching interpretation of her own powers has seriously undermined the ability of the Board of Directors and management of Gurney's to carry out basic corporate decisions. Benjamin is now attempting to micromanage and unilaterally control Gurney's business and financial decisions. Gurney's is being gravely harmed as a result of this dispute.").) The complaint does not assert a single cause of action against Carusona or Bennett, or even a single position that would be in conflict with that of Carusona and Bennett. To the contrary, the complaint is focused exclusively on contradicting Benjamin's claims and in ensuring that "the entire Board of Directors, and not just Benjamin, is empowered to vote." (Compl. ¶ 48.) Furthermore, in its motion papers, Gurney's does not even attempt to assert that a conflict exists between it and Carusona or Bennett and instead only focuses on its conflict with Benjamin. (*See* Pl.'s Mem. of Law at 2 ("Gurney's has a very real, and very serious, interest in the outcome of this litigation, and its interests directly collide with Benjamin's.").) Notably, at oral argument, counsel for Carusona conceded that there currently is no dispute or controversy between Carusona and Gurney's. Moreover, when given the opportunity to provide the Court with an example of *any* hypothetical conflict that might exist in this litigation even in the future between Gurney's and Carusona or Bennett, counsel for Carusona was unable to do so. Realignment is clearly warranted in this case—not only would a ruling in favor of Gurney's benefit Carusona and Bennett, but, in fact, a ruling in favor of their purported co-defendant Benjamin would only harm their interests by affirming that Benjamin, and *not* Carusona or Bennett, has the sole right to vote on certain issues. This conclusion is further supported by the fact that it was Carusona who verified the complaint on behalf of Gurney's. *See Commercial Computer Servs. v. Datapoint Corp.*, 641 F. Supp. 1579, 1581 (M.D. La. 1986) (realigning parties to create diversity because where "the same person or persons control both the plaintiff and [the defendant company], there can be no collision of interest").

---

[8] *Garbers-Adams*, 2010 WL 2710622, at *3 ("Although probative to the issue of realignment, the fact that [opposing parties] agree in one respect is not dispositive of whether there exists a collision of interest between them in this case." (citing *Syms, Inc. v. IBI Sec. Serv., Inc.*, 586 F. Supp. 53, 56 (S.D.N.Y. 1984) ("The fact that one defendant may benefit should plaintiff prevail against another defendant is not in and of itself sufficient to sustain realignment.")).

The Court, therefore, realigns Carusona and Bennett as plaintiffs in this matter. This realignment cures the defects in the removal notice by creating complete diversity and excusing Benjamin's failure to comply with the rule of unanimity. *See Cleveland Hous. Renewal Project*, --- F.3d ----, 2010 WL 3619803, at *3-4 (affirming district court's realignment of defendant as plaintiff to create diversity jurisdiction in removal context); *Peters*, 174 F.2d at 163 ([F]or jurisdictional purposes [on removal petition], [defendant] should be aligned with the [plaintiff-]appellants against the defendant-appellee, which, being regarded as done, reveals a separable controversy wholly between citizens of different states. It is well settled that federal courts are not bound by the alignment of the pleader as to parties plaintiff or defendant; but that they will work out the relation of each party to the suit according to the nature of his real interest, and then decide the question of jurisdiction."); *McKeen v. Cont'l Cas. Co.*, No. 10-10624, 2010 WL 3325200, at *2 (E.D. Mich. Aug. 19, 2010) (where co-defendant was realigned as plaintiff, "[s]oliciting [co-defendant's] consent prior to removal would . . . have required a meaningless act," and thus failure to obtain co-defendant's consent to removal was immaterial); *Schouman*, 1996 WL 721195, at *5 ("Although Michael Shouman is 'necessary' as a defendant in Maureen Shouman's suit to reform the Security Agreement, I find that Michael's interest in the outcome of the present suit is more properly aligned with Maureen's interest, and their interests are completely different from those of Lewis G. Mosburg, as Trustee. Therefore, for the purpose of determining the adequacy of the removal petition at this time, I conclude that it is appropriate to realign Michael Schouman as a plaintiff and to hold that removal will not be defeated solely because of his failure to consent."); *Still*, 927 F. Supp. at 130-31 ("[T]he parties alignment is misleading since State respondents' real interest lies in *petitioners* prevailing. Whereas [the other] respondent . . . wants the judgment of [the lower court] upheld . . . petitioners and State respondents both want it annulled. This is not a matter of ambiguity or conjecture. . . . Due to the harmony of interests between petitioners and State respondents in this case, the court realigns State respondents as petitioners for purposes of removal. Thus the removal petition was not defective because of State respondents' failure to join in it."); *Oppenheimer & Co., Inc.*, 1993 WL 546673, at *5 (excusing failure to join defendant in removal and also realigning defendant as plaintiff to establish diversity jurisdiction for purposes of removal where defendant "was Oppenheimer's employee and their combined interests [were] adverse to the interests of the removing parties"). Given that Carusona's and Bennett's interests are so clearly aligned with those of Gurney's and against those of Benjamin, the Court will not allow Gurney's, Carusona, or Bennett to defeat Benjamin's statutory right of removal. *See Md. Cas. Co.*, 23 F.3d at 623 ("Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court."); *Schouman*, 1996 WL 721195, at *4 ("Where one defendant's interests are adverse to that of the other, and are in fact more closely aligned with [those] of plaintiff, a court will not allow artful pleading to defeat the removal jurisdiction granted by Congress."); *Still*, 927 F. Supp. at 130-31 ("By enacting the removal statutes, Congress meant to ensure that a defendant's right to vindicate federal civil rights in a federal forum remained secure. Since State respondents are, practically

speaking, in the shoes of petitioners, they should not have the power to frustrate this right." (internal citations omitted)). Just as the parties should not be permitted to "manipulate alignment to manufacture diversity jurisdiction," *Md. Cas. Co.*, 23 F.3d at 623, neither should they be allowed to manipulate alignment to destroy jurisdiction. Indeed, it is this very principle that underlies the fraudulent joinder doctrine, *Briarpatch Ltd., LP v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction."), and the Court believes that this principle applies with equal force here, where the interests of defendants Carusona and Bennett are so unequivocally and completely aligned with those of plaintiff and against those of defendant Benjamin.[9]

---

[9] At oral argument, Gurney's also contended that Benjamin's removal was improper because the notice of removal violated the provisions of Eastern District of New York Local Rule 81.1, which requires a removing party to, *inter alia*, provide in its notice of removal the addresses of the parties and the date upon which the parties were served. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (citations omitted). Here, although Benjamin admittedly did not provide the requisite information, the Court finds her omissions to be immaterial. As to the dates of service, the rule requires the removing party to provide this information to prove that notice of removal was timely filed, and there is no dispute as to that fact in this case. Likewise, there is no dispute as to the state of residence of the parties, and, thus, the failure to provide the parties' exact addresses is irrelevant. Furthermore, Gurney's also argued that remand was warranted because removal violated the forum-defendant rule. (*See* Pl.'s Mem. of Law at 5.) The Court notes that this defect in the removal petition has been cured now that Carusona and Bennett, both New York residents, have been realigned with Gurney's as plaintiffs in this action.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand for lack of federal jurisdiction is denied.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: October 13, 2010
Central Islip, New York

\* \* \*

The attorneys for plaintiff are James M. Wicks and Franklin C. McRoberts of Farrell Fritz, PC, 1320 RXR Plaza, Uniondale, New York 11556. The attorneys for defendant Linda Benjamin are Joel C. Feffer and Daniella Quitt of Harwood Feffer LLP, 488 Madison Avenue, 8th Floor, New York, New York 10022. The attorneys for defendant Carusona are Clifford S. Robert and Kurt Andrew Schaub of Robert & Robert PLLC, 150 Broadhollow Road, #314, Melville, NY 11747.