# Declaration of Paul Montemarano

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
GURNEY'S INN RESORT & SPA LTD.,   10-CV-3993 (JFB) (ARL)

          Plaintiff,   **DECLARATION OF
PAUL MONTEMARANO
IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

- against -

LINDA BENJAMIN, THOMAS CARUSONA and
CHRISTOPHER BENNETT, Solely in their Capacity as
Members of the Board of Directors of Gurney's Inn
Resort & Spa Ltd.,

          Defendants.
------------------------------x

    I, PAUL MONTEMARANO, declare the following to be true under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.    I am the General Manager and Chief Executive Officer of Plaintiff Gurney's Inn Resort & Spa Ltd. ("Gurney's").

    2.    I have been involved in Gurney's management since 1989. I have personal knowledge of the facts and circumstances set forth in this Declaration.

    3.    I respectfully submit this Declaration in support of Gurney's motion for summary judgment declaring that each member of Gurney's Board of Directors, including Defendant Linda Benjamin ("Benjamin"), has one, equal vote concerning all matters considered by the Board, including financial decisions and whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's.

    4.    I also respectfully submit this Declaration in support of Gurney's motion for leave to amend the Verified Complaint ("Complaint") to substitute non-party John Kearney ("Kearney") as a defendant in place of Defendant Christopher Bennett ("Bennett").

1

**Nature of the Present Dispute**

5. This action seeks a declaration on a fundamental question of corporate governance at Gurney's: whether a single, minority member of Gurney's Board of Directors, or the majority of the Board as a whole, has the authority to make financial decisions on behalf of Gurney's.

6. Gurney's is a community leader and a cornerstone of the local economy on the East End of Long Island. Gurney's is one of the largest businesses on the East End, generating revenues of approximately $18 million per year. Gurney's is the single largest private taxpayer in the Town of East Hampton. Gurney's employs approximately 250 employees on an annual basis. It is the largest private, year-around employer on the East End.

7. To maintain its deserved position as one of the finest and most important businesses to the East End economy, it is critically important that Gurney's management team run smoothly and speak with one voice.

8. Since 2009, when Benjamin was elected to the Board of Directors, however, Benjamin has claimed that a single clause in Section 3(e) of Gurney's Interval Proprietary Lease (the "Lease") gives her the absolute right to make all of Gurney's financial decisions.

9. Benjamin is just a single member of a three-member Board. Benjamin is elected by Gurney's timeshare owners, who own Gurney's Class A stock. The remaining members of the Board, Defendant Thomas Carusona ("Carusona") and Kearney, are elected by the Gurney's Inn Corp. Liquidating Trust (the "Trust"), which owns Gurney's Class B stock.

10. Gurney's organizational documents provide that the Trust has the right to control Gurney's, through its appointment of a majority of the Board, until the Trust's purchase money mortgage is paid off in full and certain other conditions are met.

2

11. Despite the clear language of all of the company's organizational documents providing that the Board acts on all matters as one body, Benjamin has sent mass e-mailings to thousands of timeshare owners claiming that she alone has the right to make financial decision on behalf of the company.

12. Benjamin's position has understandably caused great upheaval and confusion among Gurney's timeshare owners and staff.

13. Based on her view that she controls Gurney's finances, Benjamin has challenged the validity of Gurney's maintenance fees and charges. This has caused some timeshare owners to express unwillingness to pay the fees.

14. Benjamin's position has also created a completely unnecessary credit risk to potential lenders and investors, who may question whether Benjamin will attempt to undermine otherwise-legitimate transactions, causing them to forego potential transactions with Gurney's.

15. Benjamin has even claimed that the other two Board members, Carusona and Kearney, have no right to be on the Board.

16. As explained in Gurney's Memorandum of Law, Benjamin's position is contrary to Gurney's controlling documents. It is also illogical.

17. The maintenance fees paid by Gurney's timeshare owners generate on average only about 20% of Gurney's total revenues. The remaining 80%—the vast majority of Gurney's revenues—are generated through hotel, spa, food and beverage sales at the resort.

18. It makes no sense from a governance perspective for a single director representing a group whose maintenance fees account for only 20% of a business's revenues to make 100% of the company's financial decisions. The tail wags the dog.

19. For these reasons, I respectfully request that the Court resolve this controversy as

soon as possible.

**The Parties' Course of Performance Before Benjamin's Election to the Board**

20. As explained in the accompanying Declarations of David Clurman and Randy White, Gurney's filed for Chapter 11 bankruptcy reorganization in 1994.

21. Before the bankruptcy, there was no Class A director. All of the members of Gurney's Board of Directors were elected by the Class B shareholders.

22. During the bankruptcy reorganization process, however, Gurney's and its largest creditors agreed to give the timeshare owners a single seat on Gurney's Board of Directors. In all discussions regarding this agreement (all of which I was a party to), it was never the intent of the parties to bestow singular or exceptional powers on the Class A Director. This agreement was intended only to allow the timeshare owners a minority voice on the Board.

23. In 1996, Edward Leggio ("Leggio"), a timeshare owner at Gurney's, became Gurney's Class A director.

24. Leggio served uninterrupted as the Class A director from 1996 until he resigned in 2009 and was replaced by Benjamin.

25. Leggio never once claimed to have the authority Benjamin claims she has to control Gurney's finances and expenditures.

26. To the contrary, Leggio always regarded himself as an equal participant on a three-member Board that could pass corporate resolutions, even concerning finances and expenditures, only by a two-thirds vote of the entire Board.

27. During his time on the Board, Leggio, on occasion, voted against corporate resolutions concerning Gurney's finances and other matters. When he did, he never questioned their validity when he gave a "no" vote.

4

28. For example, at a Board meeting on December 10, 2002, Leggio voted against a resolution to increase the timeshare owners' maintenance fees for 2003.

29. Leggio voted against the resolution but the other two Board members voted in favor of it.

30. Although Leggio voted against the resolution, he never claimed that the resolution was invalid or otherwise unenforceable because he opposed it.

31. In addition, at a Board meeting on May 30, 2000, the Board voted on a resolution to change accounting firms. Leggio voted against the resolution while the other two Board members voted in favor of the resolution.

32. The resolution passed, Gurney's hired the new accounting firm and Leggio never claimed that the resolution was a nullity or that the accounting firm was invalidly engaged.

33. Leggio's thirteen-year course of performance on the Board is important evidence that the three members of the Board have equal voting rights concerning financial matters and expenditures.

**Documents Relevant to this Motion**

34. A true and correct copy of Gurney's Summons and Verified Complaint, dated August 12, 2010, is annexed hereto as **Exhibit "1."**

35. A true and correct copy of Benjamin's Verified Answer, dated September 7, 2010, is annexed hereto as **Exhibit "2."**

36. Carusona did not answer the Verified Complaint because he joins in the relief sought in this action. In addition, on October 12, 2010, the Court issued a Memorandum and Order, in which it "realign[ed] Carusona and Bennett as plaintiffs in this matter." (*See* Docket Entry 19, at 10)

5

37. Upon information and belief, Bennett did not answer the Verified Complaint because he resigned from the Board in November 2010 and has had no further involvement with the company. In addition, Gurney's seeks in this motion to substitute Kearney as defendant in place of Bennett.

38. Proposed Defendant Kearney does not intend to answer the Verified Complaint because Kearney joins in the relief sought in this action.

39. A true and correct copy of Gurney's Certificate of Incorporation is annexed hereto as **Exhibit "3."**

40. A true and correct copy of Gurney's Certificate of Amendment of the Certificate of Incorporation is annexed hereto as **Exhibit "4."**

41. A true and correct copy of Gurney's By-Laws is annexed hereto as **Exhibit "5."**

42. A true and correct copy of Gurney's Offering Plan is annexed hereto as **Exhibit "6."**

43. A true and correct copy of Gurney's Interval Proprietary Lease is annexed hereto as **Exhibit "7."**

44. A true and correct copy of Gurney's Nondisturbance Agreement is annexed hereto as **Exhibit "8."**

45. A true and correct copy of the Affidavit of David Clurman filed in connection with Gurney's bankruptcy case, dated January 10, 1997, and an attached Order authorizing David Clurman employment as an expert witness, is annexed hereto as **Exhibit "9."**

46. A true and correct copy of the Order of the Bankruptcy Court, dated November 3, 1998, approving an attached Stipulation of Settlement, dated on or about October 1, 1998, is annexed hereto as **Exhibit "10."**

47. A true and correct copy of Gurney's First Amended Plan of Reorganization, dated on or about March 9, 1999, is annexed hereto as **Exhibit "11."**

48. A true and correct copy of the Order of the Bankruptcy Court Approving the First Amended Plan of Reorganization and the Final Decree closing Gurney's bankruptcy case, dated on or about June 16, 1999, is annexed hereto as **Exhibit "12."**

49. A true and correct copy of relevant excerpts from the transcript of the deposition of David Clurman, dated August 24, 2011, is annexed hereto as **Exhibit "13."**

WHEREFORE, I respectfully request that the Court (i) issue a declaratory judgment that each member of Gurney's Board of Directors, including Benjamin, has one, equal vote concerning all matters considered by the Board, including financial decisions and whether to increase, reduce, change, modify or terminate services or expenditures at Gurney's; and (ii) grant Gurney's leave to amend the Verified Complaint to substitute John Kearney as defendant in place of Christopher Bennett.

Dated: New York, New York
      January 6, 2012

_____
PAUL MONTEMARANO